ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| JUNTA REVISORA DE SUSBASTAS (ADMINISTRACIÓN DE SERVICIOS GENERALES)<br><br>Recurrida<br><br>v.<br><br>CH4 GREEN ENERGY, LLC<br><br>Recurrente | KLRA202500159 | *Revisión Administrativa* procedente de la Junta Revisora de Subastas (Administración de Servicios Generales)<br><br>Caso Núm.: JR-24-151-RFP<br><br>SOBRE: Recurso de Revisión Administrativa |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de junio de 2025.

Compareció la recurrente, CH4 Green Energy, LLC (en adelante, "CH4" o "recurrente") mediante el *Recurso de Revisión Administrativa* presentado el 17 de marzo de 2025. Nos solicitó la revocación de la determinación emitida por la Junta Revisora de Subastas (en adelante, "Junta Revisora" o "recurrida") de la Administración de Servicios Generales (en adelante, "ASG") el 24 de febrero de 2025. Mediante este dictamen, la Junta Revisora se declaró sin jurisdicción para atender un recurso de revisión administrativa presentado por la recurrente.

Por los fundamentos que expondremos a continuación, se **revoca** la determinación de la agencia administrativa.

---

[1] Mediante la Orden Administrativa DJ 2024-062C emitida el 6 de mayo de 2025, se enmendó la constitución de los paneles del Tribunal de Apelaciones.

**-I-**

El 28 de septiembre de 2022, el Negociado de Energía de Puerto Rico (en adelante, "NEPR"), en representación de la Autoridad de Energía Eléctrica de Puerto Rico (en adelante, "AEE"), emitió un *request for proposal* (en adelante, "RFP").[2] Este RFP se convocó para recibir propuestas para el diseño, la construcción, la instalación, la propiedad, la operación y el mantenimiento de recursos energéticos renovables en el país; además, disponía que la compraventa originada en las propuestas seleccionadas tendría una duración de veinte a veinticinco años.

El NEPR recibió un total de veintiocho (28) propuestas de doce (12) proponentes distintos. Entre estas, se encontraba la propuesta presentada el 20 de diciembre de 2023 por CH4.[3] Posterior a esto, el 9 de febrero de 2024, CH4 le cursó una carta al NEPR en la que expresó que sería ventajoso aumentar la capacidad y ampliar la oferta de energía a 62 MW, a razón de $166.13/MWh, por un período de veinticinco años; de mantenerse la capacidad en 30 MW, propusieron una tarifa revisada de $205/MWh.[4] A raíz de esto, CH4 revalorizó el costo y le presentó otra propuesta al NEPR para que se reflejara su nueva oferta basada en la capacidad energética de 30 MW a razón de $205/MWh.[5]

Seguidamente, el 22 de octubre de 2024, el NEPR notificó el *Notice of Award of Tranche 2 RFP*, donde esbozó las ofertas que obtuvieron la *buena pro*.[6] Asimismo, explicó que CH4 no estuvo entre las propuestas airosas porque recibió una calificación de precio muy alto por proponer una tarifa fija de energía a razón de $205 MWh. Tras varios trámites procesales que resultan inmeritorios pormenorizar, el NEPR emitió una notificación de

---

[2] Apéndice de la recurrente, anejo I, págs. 1-60.
[3] *Íd.*, anejo II, págs. 61-85.
[4] *Íd.*, anejo III, pág. 86.
[5] *Íd.*, anejo IV, págs. 87-111.
[6] *Íd.*, anejo V, págs. 112-133.

adjudicación corregida el 23 de diciembre de 2024.[7] Esta sostuvo lo dispuesto anteriormente sobre la propuesta de CH4.

Inconforme, CH4 presentó un *Petition for Administrative Review* el 30 de diciembre de 2024.[8] En síntesis, adujo que el comité de selección no consideró su propuesta para expandir la capacidad energética a 62 MWh a razón de $166.17/MWh, lo cual implicaba una reducción significativa en el precio. Este petitorio fue acogido por la Junta Revisora el 9 de enero de 2025.[9] No obstante, la Junta Revisora emitió una *Resolución* el 24 de febrero de 2025, la cual fue notificada ese mismo día.[10] En esta, la Junta Revisora expresó que carecía jurisdicción para atender la solicitud de revisión administrativa incoada por CH4 porque la AEE era una entidad exenta expresamente exceptuada de la aplicación de la Ley Núm. 73-2019, debido a que los acuerdos en cuestión se regían por la Ley Núm. 29-2009. Así las cosas, devolvió el caso al NEPR para que se encargara de "los trámites que en derecho procedan".[11]

Insatisfecho aún, CH4 instó su recurso de revisión administrativa ante esta curia el 17 de marzo de 2025. En este, planteó los siguientes errores:

> Erró la Junta Revisora de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico al declararse sin jurisdicción para evaluar el *Petition for Administrative Review* presentado por CH4.

> Erró la Junta Revisora de Subastas de la Administración de Servicios Generales del Gobierno de Puerto Rico al emitir una Resolución devolviendo el caso al Negociado de Energía de Puerto Rico "para los trámites que en derecho procedan" sin indicarle tales trámites y sin imponerle un plazo dentro del cual cumplir con tal obligación.

Por su parte, mediante comparecencia especial presentada el 20 de mayo de 2025, el NEPR acudió ante nos y presentó su *Alegato del Negociado de Energía.*

---

[7] *Íd.*, anejo XII, págs. 226-247.
[8] *Íd.*, anejo XIII, págs. 248-262.
[9] *Íd.*, anejo XIV, págs. 262-264.
[10] *Íd.*, anejo XX, págs. 305-314.
[11] *Íd.*, pág. 311.

Examinada la revisión administrativa de autos y la totalidad del expediente, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**-II-**

**A. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. *Íd.*, sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

En nuestro ordenamiento jurídico, se ha reiterado que, los tribunales apelativos conceden gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Íd.,* pág. 114. Más aun, cuando estas determinaciones son interpretaciones de las leyes que administra la agencia en cuestión. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias administrativas, salvo que la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun.*

*Quebradillas,* supra, pág. 114; *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020); *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 128 (2019). En otras palabras, la parte que cuestiona las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

Por otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Esto es, el tribunal revisor no tiene que otorgarle deferencia a las conclusiones o interpretaciones de derecho formuladas por las agencias administrativas. *Vázquez v. Consejo de Titulares et al.,* 2025 TSPR 56, pág. 28; 215 DPR ___. Sobre esto, el tribunal revisor deberá ejercer un juicio independiente para determinar si la actuación de la agencia administrativa está dentro del marco de sus facultades estatutarias. *Íd.* Por ello, los tribunales deben armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para una solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.,* 207 DPR 833, 843 (2021).

Además, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente, o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para

sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839 (2021).

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo, y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**B. Procesos de licitación pública y su revisión administrativa**

Nuestro ordenamiento jurídico ha reconocido, en lo aquí pertinente, dos métodos para adquirir bienes y servicios con fondos públicos, a saber: (i) subasta formal y (ii) solicitud de propuesta, conocida en inglés como *request for proposal* (en adelante, "RFP"). *Municipio de Aguada v. W Construction*, LLC, 2024 TSPR 69; 214 DPR ___. Ambos procedimientos están revestidos del más alto interés público y buscan proteger los fondos del erario. *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 343-344 (2016). Por ello, los dos mecanismos de adjudicación de subastas tienen la finalidad de obtener "los precios más bajos posibles; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia; el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento". *Aluma Const. v. AAA,* 182 DPR 776, 783 (2011).

Por un lado, la subasta formal es el mecanismo procesal de licitación más utilizado por el Estado para adquirir bienes y servicios. *Municipio de Aguada v. W Construction, LLC,* supra. El mismo está constituido por varias etapas, a saber: (1) la preparación de los pliegos de condiciones y especificaciones; (2) la publicación del aviso de subasta; (3) el recibo de las propuestas selladas y su posterior apertura pública; (4) la evaluación y el estudio de las propuestas por el comité evaluador de la agencia; (5) la

recomendación del comité respecto a la adjudicación de la *buena pro*; (6) la adjudicación de la subasta, y (7) la notificación a los licitadores. *Municipio de Aguada v. W Construction, LLC,* supra.

Por otra parte, el RFP es un método de licitación informal y flexible que permite la negociación entre el oferente y la entidad gubernamental mientras se evalúan las propuestas recibidas y antes de adjudicar la *buena pro. Municipio de Aguada v. W Construction, LLC,* supra. Es decir, es un mecanismo de compra negociada que se utiliza particularmente para adquirir bienes y servicios especializados con aspectos técnicos y complejos, o cuando existen escasos competidores cualificados. *R & B Power v. ELA*, 170 DPR 606, 621-622 (2007). Ahora bien, el RFP debe contener los siguientes parámetros: (1) desglose de los requisitos, términos y condiciones que se consideraran para la adjudicación, a los cuales cada licitador tendrá que responder, y (2) descripción del proceso de licitación junto con las fechas para recibir, evaluar y adjudicar la *buena pro. Municipio de Aguada v. W Construction, LLC,* supra; *R & B Power v. ELA*, supra, pág. 623.

La revisión judicial de los procesos de subastas y solicitudes de propuestas se rige por principios análogos a los procedimientos de adjudicación en la administración pública. De esta manera, la intervención de los foros apelativos en los procesos de revisión de una licitación "tiene como fin delimitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley". *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).

La norma general en lo que concierne a las subastas y los RFP es que la agencia ostenta de gran discreción en la evaluación de las propuestas. *Maranello et al. v. OAT*, 186 DPR 780, 792 (2012). Esto es debido a que "la agencia, con su vasta experiencia y especialización, se encuentra, de ordinario, en mejor posición que el foro judicial para determinar el mejor licitador, tomando en

consideración los factores esgrimidos tanto por la ley como por su reglamento de subastas". *Torres Prods. v. Junta Mun. Aguadilla,* 169 DPR 886, 898 (2007); *A.E.E. v. Maxon,* 163 DPR 434, 444 (2004). Por ello, nuestro ordenamiento concibe que "las determinaciones de hecho de los organismos administrativos tienen a su favor una presunción de regularidad y corrección que debe ser respetada, mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Empresas Toledo v. Junta de Subastas,* 168 DPR 771, 783 (2006).

Luego de que se determine quién obtendrá la *buena pro,* los foros apelativos deben evitar reemplazar la apreciación de la agencia cuestionada, a menos que se evidencie que la determinación es arbitraria o caprichosa, o se tomó mediando fraude o mala fe. *Maranello et al. v. OAT,* supra, pág. 793. Por ende, la revisión judicial de una determinación en un proceso de licitación pública se delimita al análisis de la razonabilidad de la decisión polemizada. *Accumail P.R. v. Junta Sub. A.A.A.,* 170 DPR 821, 829 (2007). Es menester recalcar que el tribunal no está vedado de ejercer su función revisora cuando el dictamen es contrario a derecho. *A.E.E. v. Maxon,* supra*,* pág. 445.

Nuestro ordenamiento dispone que los procesos de adjudicación y revisión de subastas o RFP ante la Junta de Subastas y la Junta Revisora de Subastas de la ASG se regirán por la norma instaurada en la ley y por cualquier disposición congruente con la LPAU. 3 LPRA sec. 9838. Empero, la LPAU categoriza el proceso de adjudicación de una subasta o RFP como un procedimiento informal cuasi judicial, por lo cual dispensa la aplicación de la mayoría de sus disposiciones, incluyendo la Carta de Derechos contenida en su Sección 3.1. *Íd.,* sec. 9641. No obstante, la ley permite que se cuestione la adjudicación final de una subasta o RFP mediante el

mecanismo de revisión judicial. Específicamente, la LPAU expone que:

> Los procesos de licitación pública se celebrarán de conformidad a la Ley 73-2019, según enmendada, salvo los procesos de licitación pública municipal que se realizarán de conformidad a la Ley 107-2020, según enmendada. **Las agencias administrativas bajo la definición de Entidades Exentas para fines de la Ley 73-2019, vendrán obligadas a adoptar los métodos de licitación y compras excepcionales y a seguir los procedimientos establecidos en la Ley 73-2019, al momento de realizar sus compras y subastas de bienes, obras y servicios no profesionales.** *Las Entidades Exentas de la Ley 73-2019, deberán además cumplir con los términos y procesos que se establecen en esta Ley y en la Ley 73-2019.*

*Íd.*, sec. 9659.

La Sección 3.19 de la LPAU establece que las entidades exentas de la Ley Núm. 73-2019 deben cumplir con los procesos establecidos en ambos estatutos.

Entonces, cuando una parte se ve adversamente afectada por la determinación en un proceso de licitación pública, la LPAU preceptúa, además:

> ***La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días calendario***, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días calendario de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días calendario que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días calendario.
>
> Si se tomare alguna determinación en la revisión administrativa, el término para instar el recurso de revisión judicial ante el Tribunal de Apelaciones comenzará a contarse desde la fecha en que se depositó en el correo federal o se notificó por correo electrónico, lo que ocurra primero, copia de la notificación de la decisión de la Junta Revisora de Subastas de la Administración de Servicios Generales adjudicando la solicitud de revisión administrativa. Si la Junta Revisora de Subastas de la Administración de Servicios Generales dejare de tomar alguna acción con relación al recurso de revisión

administrativa, dentro de los términos dispuestos en esta Ley, se entenderá que este ha sido rechazado de plano, y a partir de esa fecha comenzará a decursar el término para presentar el recurso de revisión judicial. **La presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones**.

**La parte adversamente afectada tendrá un término jurisdiccional de veinte (20) días calendario para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones**, contados a partir del depósito en el correo federal o de remitida la determinación por correo electrónico, lo que ocurra primero, ya sea de la adjudicación de la solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales, o cuando venza el término que tenía la Junta Revisora de Subastas de la Administración de Servicios Generales para determinar si acogía o no la solicitud de revisión administrativa. La notificación de la adjudicación del proceso de licitación pública deberá incluir las garantías procesales establecidas en la Ley 73-2019 relativas a los fundamentos para la adjudicación y el derecho y los términos para solicitar revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales y revisión judicial.

Las agencias administrativas, entidades apelativas, la Junta de Subastas de la Administración de Servicios Generales y la Junta Revisora de Subastas de la Administración de Servicios Generales tendrán que emitir sus notificaciones de manera simultánea y utilizando el mismo método de notificación para todas las partes. En aquellos casos en que se haya utilizado más de un método de notificación para todas las partes, el término para presentar el recurso de revisión administrativa o de revisión judicial comenzará a decursar a partir de la notificación o del depósito en el correo del primer método de notificación.

*Íd.*

Podemos derivar de la citada sección de la LPAU que, independientemente de si la adjudicación de la subasta o RFP se hizo mediante la ASG o una entidad exenta, la parte perjudicada puede presentar una solicitud de revisión administrativa ante la Junta Revisora de la ASG dentro del término jurisdiccional de diez (10) días calendario. Este requisito debe ser satisfecho antes de presentar un recurso de revisión judicial ante esta curia.

A su vez, la LPAU indica que el término para cuestionar una orden o resolución final emitida por la Junta Revisora mediante revisión judicial es de veinte (20) días calendario desde el archivo en autos de la copia de la notificación del dictamen o desde el depósito

en el correo federal o remitido el correo electrónico, o a partir del vencimiento del término que ostentaba la Junta Revisora para considerar el petitorio. *Íd.*, secs. 9672 y 9659.

**C. Ley Núm. 73-2019**

La Ley Núm. 73-2019, conocida como la *Ley de la Administración de Servicios Generales para la Centralización de las Compras del Gobierno de Puerto Rico de 2019*, 3 LPRA sec. 9831 *et seq.*, es la legislación responsable de uniformar los procesos de adquisición, evaluación y revisión en las compras de bienes, obras y servicios no profesionales para todas las entidades gubernamentales y entidades exentas.

Por un lado, la Ley Núm. 73-2019, *supra*, creó a la Junta de Subastas como un organismo cuasi judicial adscrito a la ASG facultado para evaluar y adjudicar las subastas del Gobierno de Puerto Rico mediante el procedimiento uniforme dispuesto en la misma ley. *Íd.*, sec. 9836. Su composición consiste en un (1) presidente y cuatro (4) miembros asociados, todos designados por el Gobernador con el consejo y consentimiento del Senado de Puerto Rico. *Íd.*, sec. 9836a. Además, para el descargo de sus funciones, la ASG le provee el apoyo administrativo necesario. *Íd.*

Por otro lado, el precitado estatuto creó, a su vez, a la Junta Revisora de Subastas para que fungiera como aquel organismo cuasi judicial adscrito a la ASG diseñado y facultado para revisar cualquier impugnación de las determinaciones o adjudicaciones realizadas por: (i) la Administración Auxiliar del Área de Adquisiciones; (ii) la Junta de Subastas, o (iii) las Juntas de Subastas de las entidades exentas. *Íd.*, sec. 9837. En particular, está compuesta por un (1) presidente, (2) dos miembros asociados y un (1) miembro alterno, todos nombrados por el Gobernador con el consejo y consentimiento del Senado de Puerto Rico. *Íd.*, sec. 9837a. Además, cuenta con autonomía operacional y la facultad para actuar de manera

independiente a la ASG; no obstante, para el descargo de sus funciones, puede recibir el apoyo administrativo necesario por parte de esta. *Íd.*, sec. 9837.

En consideración a lo anterior, la Ley Núm. 73-2019, *supra*, incorpora un mecanismo para revisar los procedimientos de adjudicación de subastas llevados a cabo ante la Junta de Subastas y la Junta Revisora de Subastas. *Íd.*, sec. 9838. En particular, el Artículo 64 del referido estatuto establece que:

> **La parte adversamente afectada por una decisión** de la [ASG], **de la Junta de Subastas o** *de cualquier Junta de Subastas de Entidad Exenta* **podrá, dentro del término de diez (10) días calendario** a partir del depósito en el correo federal o correo electrónico notificando la adjudicación de la subasta, **presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas** de la [ASG] [...] **La presentación del recurso de revisión administrativa ante la Junta Revisora de Subastas** de la [ASG] **será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.**

*Íd.*, sec. 9838a. (Énfasis suplido).

A su vez, la Ley Núm. 73-2019, *supra*, implanta que la Junta Revisora de Subastas dispondrá de un término de diez (10) días calendario contados desde la fecha de su presentación para determinar si acoge o no la solicitud de revisión administrativa. *Íd.*, sec. 9838c. No obstante, si dejare de tomar alguna acción con relación a la solicitud de revisión dentro del mencionado plazo, se entenderá que ha sido rechazada de plano y, a partir de esa fecha, comienza a transcurrir el término para la revisión judicial. *Íd.*

Además, el Artículo 65 de la Ley Núm. 73-2019, *supra*, le impone a la parte adversamente afectada el requisito jurisdiccional de notificar una copia de la solicitud de revisión administrativa a los siguientes: (i) la ASG; (ii) la Junta de Subastas correspondiente, y (iii) al licitador agraciado. *Íd.*, sec. 9838b. Específicamente, este lee como sigue:

> La parte adversamente afectada notificará copia de la solicitud de revisión administrativa a la Administración y a la Junta de Subastas correspondiente; simultáneamente

> notificará también al proveedor que obtuvo la buena pro en la subasta en cumplimiento con lo establecido en el Artículo 62 de esta Ley. Este requisito es de carácter jurisdiccional. En el propio escrito de revisión, la parte recurrente certificará a la Junta Revisora su cumplimiento con este requisito.

*Íd.*

En cuanto a los requisitos de carácter jurisdiccional, nuestro ordenamiento jurídico ha establecido que estos tienen que surgir claramente de la intención del legislador. *Rosario Domínguez et als. v. ELA*, 198 DPR 197, 209 (2017); *Cruz Parrilla v. Depto. Vivienda*, 184 DPR 393, 403-404 (2012). Así, "los requisitos jurisdiccionales establecidos por ley tienen que ejecutarse previo a que el tribunal considere los méritos de una controversia". *Rosario Domínguez et als. v. ELA*, supra, pág. 208. Esto implica que, incumplir con las directrices de naturaleza jurisdiccional, priva al tribunal de autoridad sobre el asunto que se intenta traer ante su consideración. *Íd.,* págs. 208-209. En consecuencia, se considera que un término jurisdiccional es fatal, improrrogable e insubsanable, por lo que ni se puede acortar ni extender. *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268 (2018). Entonces, "[p]ara evitar ese escenario, son los tribunales los llamados a ser árbitros y celosos guardianes de los términos reglamentarios". *Soto Pino v. Uno Radio Group*, 189 DPR 84, 93 (2013).

Ahora, es imprescindible precisar que no todo organismo público está obligado a realizar sus procesos de licitación pública a través de la ASG. El Artículo 4 de la Ley Núm. 73-2019, *supra,* define a la entidad exenta como una:

> Entidad Gubernamental que no viene obligada a realizar sus compras a través de la Administración, ya sea por razón de operar bajo lo dispuesto en un plan fiscal vigente o por tratarse de entidades fiscalizadoras de la integridad del servicio público y la eficiencia gubernamental. Para propósitos de esta Ley, se considerarán entidades exentas las siguientes: Oficina de Ética Gubernamental, Oficina del Inspector General de Puerto Rico, Comisión Estatal de Elecciones, Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, Banco Gubernamental de Fomento para Puerto Rico, Autoridad para las Alianzas Público Privadas de Puerto Rico, Autoridad para el Financiamiento de la Infraestructura de Puerto Rico, Autoridad de Acueductos y Alcantarillados, Autoridad de Energía

Eléctrica, Autoridad de Carreteras y Transportación, Corporación del Proyecto ENLACE del Caño Martín Peña, la Corporación Pública para la Supervisión de Seguros de Cooperativas de Puerto Rico, programas e instalaciones de la Administración de Servicios Médicos de Puerto Rico, el Centro Médico, el Hospital Cardiovascular, el Hospital Universitario de Adultos, el Hospital Pediátrico Universitario, el Hospital Universitario Dr. Ramón Ruiz Arnau, los Centros de Diagnóstico y Tratamiento [e] instalaciones de discapacidad intelectual adscritos al Departamento de Salud, el Hospital Industrial y dispensarios regionales e intermedios, la Corporación del Fondo del Seguro del Estado, la Autoridad Metropolitana de Autobuses y la Autoridad de Edificios Públicos.

No obstante, **las entidades exentas tienen que realizar sus procesos de licitación acogiendo los métodos de licitación establecidos en esta Ley**. Además, las mismas deben acogerse a las categorías previamente licitadas y contratos otorgados por la Administración de Servicios Generales.

3 LPRA sec. 9831c (p). (Énfasis suplido).

Particularmente, el Artículo 3 de la citada ley precisa que estas entidades:

[N]o estarán obligadas a realizar sus compras y subastas de bienes, obras y servicios no profesionales a través de la [ASG], mientras se encuentre en vigencia el Plan Fiscal correspondiente, sin embargo, **vendrán obligadas a adoptar los métodos de licitación y compras excepcionales y a seguir los procedimientos aquí establecidos al momento de realizar sus compras y subastas de bienes, obras y servicios no profesionales**. Una vez culmine la vigencia del Plan Fiscal correspondiente, si aplica, serán consideradas como Entidades Gubernamentales, según definidas en esta Ley, y vendrán obligadas a realizar sus compras a través de la [ASG].

[…]

Aquellos departamentos, agencias, dependencias e instrumentalidades públicas pertenecientes a la Rama Ejecutiva que participen en un **contrato de Alianza**, según definido en la Ley 29-2009, según enmendada, **estarán exentos de la aplicabilidad de las disposiciones de esta Ley, únicamente en cuanto a los asuntos integrados en el Contrato de Alianza en cuestión**.

**Se exceptúa de la aplicación de esta Ley cualquier Contrato de Operación y Mantenimiento con un operador privado que no constituya un Contrato de Alianza Público Privada, o cualquier negocio jurídico análogo** a los establecidos en la Ley 29-20[0]9, según enmendada. Cualquier operador privado a quien el gobierno haya otorgado un Contrato de Operación y Mantenimiento **no vendrá obligado a realizar sus compras a través de la [ASG]**. No obstante, dicho operador privado podrá realizar sus compras de manera **voluntaria**, a través de la [ASG].

*Íd.*, sec. 9831b. (Énfasis suplido).

Por su parte, el Reglamento Núm. 9230 de 18 de noviembre de 2020, conocido como el *Reglamento Uniforme de Compras y Subastas de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico* (en adelante, "Reglamento Núm. 9230"), dispone que, a cualquier entidad ejecutiva que participe en un contrato de Alianza, le resulta inaplicable los preceptos contenidos en la Ley Núm. 73-2019, *supra*, "únicamente en cuanto a los asuntos integrados en el Contrato de Alianza en cuestión". *Íd.*, Art. 1.4. Además, este reglamento aclara que:

> [S]i el contrato otorgado entre el Proponente seleccionado y la Entidad Gubernamental Participante para establecer una Alianza dispone que los procesos adquisitivos de la Alianza se tramitarán acorde [con] el trámite de compras gubernamentales, se observará lo dispuesto en este Reglamento o en el reglamento de la Entidad Exenta correspondiente, según sea el caso.

*Íd.*

Asimismo, el Reglamento Núm. 9230, *supra*, establece que, en el caso de los operadores privados que hayan contratado con el gobierno sobre la operación y mantenimiento, pero que el acuerdo no resulte en una alianza público-privada, estos no están "obligados a realizar sus adquisiciones a través de la [ASG]". *Íd.* Empero, pueden comprar a través de la ASG voluntariamente. *Íd.* Para así hacerlo, deben cursarle una notificación a la ASG sobre su intención de utilizar sus servicios, a lo cual la agencia responderá con los documentos, información o requisitos necesarios para llevar a cabo el trámite solicitado. *Íd.* En sentido contrario, de iniciarse una transacción al amparo de un reglamento interno, esta debe ser finalizada valiéndose de este porque no se permiten procedimientos de compra híbridos porque se aspira a salvaguardar un proceso íntegro. *Íd.*

**D. Ley 29-2009**

La Ley Núm. 29-2009, conocida como la *Ley de Alianzas Público Privadas,* se estatuyó para promover la contratación

gubernamental de entidades privadas para aliviar la situación fiscal carente del país, robustecer el crédito local, desarrollar la aptitud de financiamiento y asentir el desarrollo de proyectos de interés público, incluyendo la construcción de instalaciones nuevas, el mantenimiento de las existentes y la prestación de servicios esenciales. Este estatuto especifica que:

> [t]ales Alianzas se instan con el propósito de proveer un servicio a los ciudadanos y ciudadanas, así como para construir u operar una instalación o proyecto de alta prioridad para el Estado, ya sea por su urgencia, necesidad o conveniencia para la ciudadanía. Esa Alianza debe estar revestida de un alto interés público, de manera que el Estado no renuncia a su responsabilidad de proteger dicho interés, ni a los derechos de recibir un servicio eficiente, ni a la titularidad de los activos públicos incluidos en el Contrato de Alianza.

P. del S. 469 de 8 de junio de 2009, 1ra Sesión Ordinaria, 16.ª Asamblea Legislativa, pág. 4.

Esta ley provee el marco legal para la utilización de Alianzas Público-Privadas para fomentar el crecimiento económico de Puerto Rico. *Íd.*, pág. 5.

El Artículo 3 de la citada ley enmarca la política pública de la promoción y el fortalecimiento de las alianzas para la producción de proyectos prioritarios; el fomento del desarrollo y mantenimiento de la infraestructura; la mitigación del riesgo que implica el desarrollo de la operación o el mantenimiento de la iniciativa, al este ser distribuido entre el ente gubernamental y el privado; el mejoramiento de la prestación de servicios y funciones del Gobierno; el impulso de la creación de empleos, y la promoción del desarrollo socioeconómico y la competitividad de Puerto Rico. 27 LPRA sec. 2602. Estas alianzas promueven la participación ciudadana y de empresas locales en los proyectos y propicia un aumento en la compra de productos y servicios regionales. *Íd.* Asimismo, estos contratos apoyan la difusión del conocimiento en los ámbitos laborales y escolares para la evaluación, supervisión y realización de la encomienda. *Íd.*

Los contratos de alianza podrán versar sobre las siguientes iniciativas:

(1) El desarrollo, construcción u operación de sistemas de relleno sanitarios, incluyendo actividades de recuperación de metano, así como instalaciones para el manejo y disposición de desperdicios sólidos no peligrosos y peligrosos, tales como plantas de reciclaje, de composta y de conversión de desperdicios a energía;

(2) La construcción, operación o mantenimiento de embalses y represas, incluyendo toda infraestructura necesaria para su producción, tratamiento funcionamiento y distribución de agua y de la infraestructura para la producción de energía hidroeléctrica; y de plantas de tratamiento de aguas usadas y potables;

(3) La construcción, operación o mantenimiento de plantas para la producción de energía existentes o nuevas que utilicen combustibles alternos al petróleo o que utilicen fuentes renovables, tales como la energía eólica, solar y océano termal, entre otras, al igual que la transmisión de energía de cualquier tipo;

(4) La construcción, operación o mantenimiento de sistemas de transportación de cualquier tipo, red vial o infraestructura relacionada, incluyendo marítimo y aérea;

(5) La construcción, operación o mantenimiento de instalaciones educativas, de salud, seguridad, corrección y rehabilitación. En el caso de operación de instalaciones educativas, se podrá establecer una Alianza Público Privada, si dicho Contrato es exclusivamente con una Cooperativa de Trabajadores, una Corporación Especial Propiedad de Trabajadores o una Entidad sin fines de lucro;

(6) La construcción, operación o mantenimiento de proyectos de vivienda de interés social;

(7) La construcción, operación o mantenimiento de instalaciones deportivas, recreativas, turísticas y de esparcimiento cultural;

(8) La construcción, operación o mantenimiento de redes de comunicación alámbrica o inalámbricas para infraestructura de comunicación de cualquier tipo;

(9) El diseño, construcción, operación o mantenimiento de sistemas de alta tecnología, de informática y mecanización;

(10) La construcción, operación o mantenimiento de cualquier otro tipo de actividad o instalación o servicio que de tiempo en tiempo sea identificada como Proyecto Prioritario por la Autoridad mediante reglamento o cualquier otro mecanismo.

*Íd.*

La ley detalla varios términos relevantes a las controversias planteadas en este recurso. Estos son los siguientes:

(d) Alianza Público Privada, Alianza y Alianza público privada participativa - Cualquier acuerdo entre una entidad gubernamental y una o más personas, sujeto a la política pública establecida en este capítulo, **cuyos términos estén**

**previstos en un contrato de alianza**, para la delegación de las operaciones, funciones, servicios o responsabilidades de cualquier entidad gubernamental, así como para el **diseño, desarrollo, financiamiento, mantenimiento u operación de una o más instalaciones o cualquier combinación de las anteriores**.

[...]

(g) Comité de Alianza - Comité designado por la Autoridad para evaluar y seleccionar las personas cualificadas y los proponentes de una alianza y establecer y negociar los términos y condiciones que considere apropiados para el contrato de alianza correspondiente.

[...]

(i) Contrato de alianza – El contrato otorgado entre el proponente seleccionado y la Entidad Gubernamental Participante, para establecer una alianza, el cual puede incluir, pero no se limitará a, la **delegación de una función, la administración o prestación de uno o más servicios, o el diseño, construcción, financiamiento, mantenimiento u operación de una o más instalaciones**, que sean o estén estrechamente relacionados con los proyectos prioritarios según establecido en la sección 2602 de este título. Un contrato de alianza puede ser, sin que se entienda como una limitación cualquier modalidad de los siguientes tipos de contratos: diseño / construcción ("design/build"), diseño/ construcción / operación ("design / build / operate"), diseño / construcción / financiamiento / operación ("design / build / finance / operate, diseño / construcción / transferencia / operación ("design / build / transfer / operate", diseño / construcción / operación / transferencia ("design / build / operate transfer"), contrato de llave en mano ("turnkey'), contrato de arrendamiento a largo plazo, contrato de derecho de superficie, contrato de concesión administrativa, contrato de empresa común ("joint venture"), contrato de administración y operación a largo plazo, y **cualquier otro tipo de contrato que separe o combine las fases de diseño, construcción, financiamiento, operación o mantenimiento de los proyectos prioritarios**, según establecidos en la sec. 2602 de este título. Las obligaciones que generen estos contratos serán vinculantes siempre que no sean contrarias a la ley, la moral, ni el orden público.

*Íd.*, sec. 2601. (Énfasis suplido).

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

En síntesis, CH4 alegó que la Junta Revisora se equivocó al devolver el caso al NEPR tras declararse sin jurisdicción para atender su recurso de revisión administrativa. Por ende, entiende que el caso debe ser devuelto a la Junta Revisora para que esta disponga del recurso en sus méritos. En la alternativa, CH4 arguyó

que la Junta Revisora erró al devolver el caso al NEPR "para los trámites que en derecho procedan" sin precisar a qué gestiones se refería y sin imponerle un plazo para cumplir con esa obligación.

A su vez, mediante comparecencia especial, el NEPR adujo que la Junta Revisora actuó desacertadamente al declararse sin jurisdicción para considerar el recurso de revisión administrativa incoado por CH4. Así, entendió que el caso debe ser devuelto a la Junta Revisora para que esta disponga del recurso en sus méritos. Además, argumentó contra el segundo planteamiento de error en el recurso de revisión judicial de CH4, especificando que no era procedente en derecho una paralización de los trámites porque no se sustenta y provocaría una dilación innecesaria de los procedimientos.

De entrada, precisamos que solo discutiremos el primer señalamiento de error apuntalado por CH4, debido a que es innecesario adentrarnos en el segundo por lo que esbozaremos a continuación.

Según explicamos, la Junta Revisora es el ente gubernamental encargado de procesar y adjudicar las revisiones administrativas que están relacionadas con los procesos de licitación pública. La Junta Revisora no debe entender solamente reclamaciones vinculadas a licitaciones llevadas a cabo por la ASG, sino que debe considerar aquellas desarrolladas en la junta de subastas de una entidad exenta. La petición de revisión administrativa, como hemos planteado, es un requisito jurisdiccional para poder acudir a este foro mediante revisión judicial.

No obstante, la legislación pertinente al funcionamiento de la ASG recalca que hay unas excepciones en virtud de las cuales los licitadores no tienen que acudir ante la Junta Revisora cuando desean impugnar la subasta o RFP porque no le sería aplicable la

Ley Núm. 73-2019, *supra,* al procedimiento. Una de estas prerrogativas surge cuando la licitación cuestionada involucra un contrato de alianza público-privada en lo que específicamente se relaciona con esa coalición, un contrato de *operación o mantenimiento con un operador privado* que no constituya una alianza o un negocio jurídico análogo a este último, según establecido en la Ley Núm. 29-2009, *supra.* Empero, se podrán hacer las compras *voluntariamente* a través de la ASG, de así proceder la agencia administrativa o el operador privado.

En el presente caso, CH4 señaló que la Junta Revisora incidió al declararse sin jurisdicción toda vez que el RFP en cuestión involucra un contrato de operación o mantenimiento con un operador privado que no constituye una alianza o negocio jurídico análogo a este. En su *Resolución,* la Junta Revisora acentuó que el RFP llevado a cabo por el NEPR, cuerpo que representaba a una entidad exenta, la AEE, tenía como propósito establecer un acuerdo a largo plazo de diseño, construcción, y *operación y mantenimiento* de instalaciones destinadas a la generación de energía renovable para vender al sistema eléctrico puertorriqueño, lo cual estaba exclusivamente regulado por la Ley Núm. 29-2009, *supra.* Por esto, razonó que la Ley Núm. 73-2019, *supra,* era inaplicable, por lo cual no tendría la autoridad para incidir sobre el proceso de licitación pública impugnado por CH4. Asimismo, hizo hincapié en que la "participación *intergerencial*" en esta coyuntura reforzaba el hecho de que el negocio jurídico involucrado era uno análogo a un acuerdo de operación y mantenimiento. Erró al así concluir, veamos.

Como hemos recalcado, los preceptos de la Ley Núm. 73-2019, *supra,* no operan cuando existe un contrato de alianza público-privada o un contrato de operación y mantenimiento con un ente privado o negocio jurídico análogo a este. En el presente caso, si bien se podría argumentar que el contrato que eventualmente se firme

como producto del RFP en cuestión es análogo al de un contrato de alianza, estamos ante un proceso *preliminar* de *selección* de un operador privado. Esto implica que el RFP impugnado se da en un contexto *anterior* a la contratación final entre el operador privado agraciado y la entidad gubernamental.

Ciertamente, deducimos que el RFP convocado por el NEPR en representación de la AEE no implica un contrato regido bajo la Ley Núm. 29-2009, *supra*, debido a que no cumple con el proceso establecido por esta para forjar una alianza público-privada. Además, como lo instaura la Ley Núm. 73-2019, *supra*, la AEE es una entidad exenta que no está obligada a realizar sus compras a través de la ASG. Como se desprende de los hechos del caso, el RFP no se llevó a cabo a través de la ASG, sino en el NEPR y, por disposición estatutaria, las juntas de subastas de las entidades exentas deben respetar los procedimientos implantados cuando realicen sus compras y subastas de bienes, obras y servicios no profesionales. 3 LPRA sec. 9659. Incluso, el proceso de revisión administrativa de las entidades exentas es el mismo que el de las entidades no exentas, salvo en escasas excepciones.

Como regla general, la Ley Núm. 73-2019, *supra*, expone que el procedimiento de revisión administrativa de una adjudicación de una licitación pública ha de ser atendida por la Junta Revisora; esto *incluye a los dictámenes de las juntas de subastas de entidades exentas*. 3 LPRA sec. 9838a. Esto vincula directamente a la citada Sección 3.19 de la LPAU, la cual expresa lo mismo sobre la revisión administrativa de una subasta realizada en beneficio de un ente gubernamental relevado de tener que ejecutar sus compras a través de la ASG. 3 LPRA sec. 9659.

No obstante, como hemos explicado, las entidades gubernamentales que han convenido un contrato de alianza público-privada, o un operador privado con el cual se ha pactado un

convenio sobre la operación y el mantenimiento o un negocio análogo a una alianza, les resultan inaplicables las disposiciones contenidas en la Ley Núm. 73-2019, *supra*. Precisamos que el Artículo 3 de la Ley Núm. 73-2019, *supra*, traza explícitamente lo que sigue:

> **Se exceptúa de la aplicación de esta Ley cualquier Contrato de Operación y Mantenimiento <u>con</u> un operador privado que no constituya un Contrato de Alianza Público Privada, o cualquier negocio jurídico análogo** a los establecidos en la Ley 29-20[0]9, según enmendada. Cualquier *operador privado a quien el gobierno haya <u>otorgado</u> un Contrato de Operación y Mantenimiento **no vendrá obligado a realizar sus compras a través de la [ASG]**.* No obstante, dicho operador privado podrá realizar sus compras de manera **voluntaria**, a través de la [ASG].

3 LPRA sec. 9831b.

Entendemos que, en este recurso, la Junta Revisora propone una apreciación muy amplia sobre el alcance de este artículo. Primordialmente, esta disposición de ley no versa sobre el procedimiento de revisión administrativa de un proceso de adjudicación de licitación pública realizado por una entidad exenta y exceptuada de la aplicación de la Ley Núm. 73-2019, *supra*. Es decir, la ley hace silencio sobre cómo cuestionar el procedimiento administrativo en esta instancia. Esto es neurálgico, debido a que, al aducir que el procedimiento de revisión administrativa ante la Junta Revisora de Subastas es inaplicable en este caso, se les dejaría sin remedio a los perjudicados que desean impugnar el proceso y estos no pudiesen recurrir ante nosotros a través de la revisión judicial porque es un requisito *jurisdiccional* presentarle su súplica a la Junta Revisora primero.

Asimismo, la interpretación de la Junta Revisora implica que, en estas circunstancias, la Ley Núm. 73-2019, *supra*, está completamente fuera del panorama. Dicho de otro modo, cuando una entidad gubernamental diligencia cualquier gestión contractual de operación y mantenimiento con un operador privado u otorga un negocio jurídico análogo a una alianza, no aplican las disposiciones

estatutarias sobre la ASG. Somos del criterio de que la ley imbrica una cuestión de *temporalidad*. Indica expresamente que, cuando una entidad gubernamental ***ya ha otorgado un contrato con un operador privado*** y este se dispone a realizar sus compras, este no se verá limitado por lo contenido en la Ley Núm. 73-2019, *supra*. En cambio, esta legislación no menciona nada sobre el proceso de *selección de un operador privado*. Más bien, se refiere a una situación en la cual el ente gubernamental *ya* ha tomado la decisión sobre quién llevará a cabo las gestiones para las cuales ha sido elegido, facilitando así el proceso de compra del operador privado. En este caso, no se ha otorgado un contrato entre los licitadores agraciados y la AEE, sino que estos fueron **seleccionados** para entonces pasar a la fase contractual con la agencia.

Además, aunque no fuese del todo aplicable la Ley Núm. 73-2019, *supra*, no podemos desatender que la Sección 3.19 de la LPAU incide sobre los procesos de licitación pública también y esta es consistente con lo dispuesto en la legislación especial. Es decir, la LPAU es aplicable a este caso y la mencionada sección dictamina que una "**parte adversamente afectada** por una determinación en un **proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales** dentro del término de diez (10) días calendario". 3 LPRA sec. 9659. No debe perderse de perspectiva que la Sección 3.19 de la LPAU dispone que aún las entidades exentas, como lo es la AEE, deben "**cumplir con los términos y procesos que se establecen en esta Ley y en la Ley 73-2019**" *Íd.* Estos procesos incluyen la revisión administrativa ante la Junta Revisora.

Por último, es imperativo subrayar que el *Notice of Award of Tranche 2 RFP* emitido por el NEPR advierte lo siguiente:

> A party adversely affected by the Award may, within ten (10) calendar days from the date the notice of the Award is uploaded on the PREB-IC Website message board, or from when they are notified by electronic mail, whichever occurs first, **file a petition for *administrative review* with the Bid Review Board of the General Services Administration of the Government of Puerto Rico** (hereinafter referred to as the "Board"). The petition for administrative review must be filed with the clerk of the Board and served on all other Proponents within the time prescribed for its filing.

Apéndice de la recurrente, anejo XII, pág. 239. (Énfasis suplido).

Esto quiere decir que la notificación de la adjudicación del RFP incluyó expresamente a la revisión administrativa ante la Junta Revisora como único remedio para las partes lesionadas por la decisión tomada.

Por todo lo anterior, colegimos que le corresponde a la Junta Revisora **atender en sus méritos** la revisión administrativa instada por la adjudicación de una subasta o RFP que versa sobre la *selección* de un **operador privado**, quien realizará labores de operación y mantenimiento o que se adentrará en un negocio jurídico análogo a una alianza público-privada, por una entidad gubernamental exenta.

En conclusión, la Ley Núm. 73-2019, *supra*, sería aplicable en este caso para la revisión del proceso de *selección* del operador privado. Así, la Junta Revisora no podía declararse sin jurisdicción para atender el recurso de revisión administrativa incoado por CH4. Resolvemos, entonces, que corresponde revocar el dictamen de la Junta Revisora y devolverle el caso para que esta dilucide el petitorio instado en sus méritos.

**-IV-**

Por los fundamentos expuestos, se **revoca** la determinación de la Junta Revisora de Subastas de la Administración de Servicios Generales y se **devuelve** para que atiendan los méritos del caso de autos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones